UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

**JANAFER SHABA,**
an individual,

        Plaintiff,        Case No.:

*-vs-*                              Honorable:

                                    Magistrate:

**WILLIAM BEAUMONT HOSPITAL,**
**d/b/a BEAUMONT HEALTH SYSTEM,**
a domestic nonprofit corporation,

        Defendant.
_____/

BURGESS, SHARP, & GOLDEN, PLLC
Attorneys for Plaintiff
BY:   Heidi T. Sharp (P 69641)
        Joseph A. Golden (P 14105)
43260 Garfield Road, Suite 280
Clinton Township, MI 48038
(586) 226-2627
heidi@bsglawfirm.com
joseph@bsglawfirm.com
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Janafer Shaba ("PLAINTIFF"), through her attorneys at Burgess, Sharp, & Golden, PLLC, states the following for her Complaint against William Beaumont Hospital, d/b/a Beaumont Health System ("DEFENDANT"):

1. At all relevant times, Plaintiff was an employee of Defendant.

2. Plaintiff resides in the City of Bloomfield Hills, County of Oakland, Michigan.

3. Defendant is a domestic nonprofit corporation, incorporated in the State of Michigan, doing business in the State of Michigan.

4. The events giving rise to the cause of action occurred in the City of Southfield, Oakland County, Michigan.

5. This court has jurisdiction under Title VII of the Civil Rights Act of 1964, and pendant jurisdiction over state law claims under 28 USC 1367(a).

## GENERAL ALLEGATIONS

6. Plaintiff is an Arabic-speaking American citizen who is of Iraqi national origin.

7. Plaintiff interviewed for a position with Defendant as a part-time registrar on May 18, 2016.

8. On May 27, 2016, Sheran Bly ("BLY") offered Plaintiff the position as a part-time registrar for Defendant.

9. Bly sent Plaintiff an offer letter on May 27, 2016.

10. The offer letter instructed Plaintiff to appear for a pre-employment physical at Occupational Health Services ("OHS") on June 7, 2016.

11. The offer letter further instructed that, once clearance after the physical was received, Plaintiff should report to Defendant's human resources department ("HR").

12. The offer letter did not contain any instruction regarding how the post-physical clearance was to be received. Further, it did not contain any language indicating that Plaintiff was not to contact OHS for her results.

13. When Plaintiff appeared for her physical, OHS advised her to return on June 9, 2016, to have her tuberculosis test read and receive her drug screen clearance, and that from there, she could go to HR to return her signed offer letter and new hire paperwork.

14. When Plaintiff left from her physical, she was provided with lab information and a telephone number. She was not instructed to refrain from contacting the lab.

15. When Plaintiff returned to OHS on June 9, 2016, the nurse advised her that her drug screen clearance had not yet been received, meaning that she would have to wait until the end of the day and would not be able to report to HR.

16. Plaintiff, having been provided with a telephone number for the lab processing her drug screen, and wanting to receive clearance to report to work as soon as possible, called the number that OHS had provided to her the day before to receive her drug screen results.

17. When Plaintiff contacted the lab, she was advised that the lab had already provided her drug screen to OHS.

18. Plaintiff then contacted OHS to advise of her telephone call with the lab, and the nurse advised that she would have the results faxed to HR.

19. Plaintiff then contacted HR to ask whether she needed an appointment to report there. When she contacted HR, Ebbonye Graham, Senior Human Resources Representative ("GRAHAM"), advised her that she did not need an appointment.

20. Once her telephone call with Graham was complete, OHS contacted Plaintiff to advise that her drug screen results had been received, that the results would be faxed to HR, and that Plaintiff could now go to HR.

21. Plaintiff went to HR and was greeted by Michael Woolsey, Human Resources Manager ("WOOLSEY"), who buzzed her into the HR office, shook her hand, and introduced himself to her.

22. Woolsey then directed Plaintiff to Kiara Massey, the Employment Assistant ("MASSEY").

23. Graham then entered the HR lobby and advised Massey that Plaintiff's clearance was on the fax machine.

24. Plaintiff signed her offer letter and turned in her new hire paperwork to Massey.

25. The entire interaction at HR was very informal, with no appointment being necessary, and Plaintiff having worn gym clothes to simply turn in paperwork.

26. After Plaintiff turned in her paperwork, she received a telephone call from her mother-in-law on her mobile telephone, who was caring for Plaintiff's child while Plaintiff was out for the day.

27. Plaintiff quickly apologized to Massey and explained why she needed to take the telephone call. Massey seemed to understand and simply went about making copies of Plaintiff's paperwork while Plaintiff took the telephone call.

28. Plaintiff's mother-in-law only speaks Arabic, and so this is the language that Plaintiff was speaking while on her telephone call.

29. After verifying that everything was all right with her child, Plaintiff ended the telephone call and again apologized to Massey.

30. Massey advised that the phone call was not an issue and instructed Plaintiff to go to Defendant's security office, located in Royal Oak.

31. Plaintiff reported to the security office and picked up her badge for employment.

32. After leaving the security office, Plaintiff received a telephone call from her supervisor, Bushra Kassed ("KASSED"), asking her what happened.

33. Kassed then explained that she received a "disturbing" e-mail from Graham stating that Plaintiff had called the lab to obtain her results and expedite her clearance.

34. The next morning, Bly contacted Plaintiff and rescinded her employment office, stating that Plaintiff breached protocol and HIPAA by contacting the lab.

35. Plaintiff had never been advised that she could not request her lab results.

36. Plaintiff's lab results were not released directly to her, but rather, sent directly to OHS.

37. Bly instructed Plaintiff to contact Graham if she had any further questions.

38. Plaintiff contacted Graham to understand why her offer was being rescinded.

39. Graham advised Plaintiff that she was unprofessional in taking the telephone call from her mother-in-law.

40. On Monday, June 20, Defendant's training department contacted Plaintiff because, believing she had been terminated, she did not appear for a training.

41. Plaintiff attempted to contact Woolsey multiple times to try to figure out what was happening, but did not receive any return contact.

42. Defendant has only stated that they rescinded Plaintiff's offer because she took a "loud" telephone call while in the HR lobby.

43. The telephone call occurred in the lobby of HR, and anyone in the HR office could hear Plaintiff speaking Arabic while on the telephone.

44. Plaintiff filed a charge at the Equal Employment Opportunity Commission ("EEOC") on June 21, 2016, due to the fact that her offer was rescinded for speaking Arabic in Defendant's HR lobby.

45. Plaintiff received a right-to-sue letter from the EEOC on December 16, 2016.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII")

46. Plaintiff incorporates the preceding paragraphs by reference as if fully reinstated herein.

47. Defendant is an employer as defined by Title VII.

48. Plaintiff was an employee of Defendant.

49. Plaintiff is of Arabic origin.

50. Defendant violated Title VII when it discriminated against her for speaking Arabic in the HR lobby and rescinded her job offer.

51. Defendant violated Title VII when it treated Plaintiff differently from similarly-situated individuals who are not Arabic.

52. Other similarly situated employees who were not Arabic and had similar positions did not have job offers rescinded for taking "loud" telephone calls during informal drop-in meetings.

53. The reasons given for the rescission of Plaintiff's job offer were inaccurate, untrue, or otherwise in violation of Plaintiff's statutory rights, and were manufactured as a pretext to cover up Defendant's intent to discriminate against Plaintiff because of her national origin.

54. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of Plaintiff's national origin and acted in accordance with that predisposition.

55. Defendant's actions were intentional in disregard for Plaintiff's rights and sensibilities.

56. As a direct result of Defendant's illegal discrimination because of Plaintiff's national origin, Plaintiff suffered lost wages, lost benefits, loss of future wages, liquidated damages, attorney fees, costs, and loss of employment opportunities.

**COUNT II – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA")**

57. Plaintiff incorporates the preceding paragraphs by reference as if fully reinstated herein.

58. Plaintiff was an employee and Defendant was an employer as defined by ELCRA.

59. Defendant violated ELCRA by discriminating against Plaintiff when it made her national origin a factor in the decision to rescind her job offer.

60. Defendant violated ELCRA by discriminating against Plaintiff when it treated her differently from similarly-situated individuals who were not Arabic.

61. Other similarly-situated employees who were not Arabic did not have job offers rescinded for taking "loud" telephone calls during informal, drop-in meetings.

62. The reasons given for the rescission of Plaintiff's job offer were inaccurate, untrue, or otherwise in violation of Plaintiff's statutory rights and were manufactured as a pretext to cover up the employer's intent to discriminate against Plaintiff because of her national origin.

63. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of her national origin and acted in accordance with that predisposition.

64. Defendant's actions were intentional in disregard for Plaintiff's rights and sensibilities.

65. As a direct result of Defendant's illegal discrimination because of Plaintiff's national origin, Plaintiff suffered lost wages, lost benefits, loss of future wages, liquidated damages, attorney fees, costs, and loss of employment opportunities.

Plaintiff respectfully requests that this Honorable Court grant whatever legal or equitable relief it finds necessary to compensate Plaintiff for her lost wages, lost benefits, loss of future wages, liquidated damages, loss of employment and advanced opportunities, humiliation and embarrassment, mental and emotional distress, the loss of the ordinary pleasures of everyday life, attorney fees, and costs.

Dated: March 15, 2017                    Respectfully Submitted,

                                                                    BURGESS SHARP & GOLDEN, PLLC
                                                                    Attorneys for Plaintiff

                                                                    <u>/s/ Joseph A. Golden</u>
                                                                    Joseph A. Golden, P14105
                                                                    43260 Garfield, Suite 280
                                                                    Clinton Township, MI  48038
                                                                    586-226-2627
                                                                    joseph@bsglawfirm.com

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial in the above-captioned case.

Dated: March 15, 2017                              Respectfully Submitted,

                                                                BURGESS SHARP & GOLDEN, PLLC
                                                                Attorneys for Plaintiff

                                                                /s/ Joseph A. Golden
                                                                Joseph A. Golden, P14105
                                                                43260 Garfield, Suite 280
                                                                Clinton Township, MI  48038
                                                                586-226-2627
                                                                joseph@bsglawfirm.com